UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARVIN NOBLE,

                Petitioner,

v.

SHANE JACKSON,

                Respondent.

_____/

Case No. 2:18-cv-13876

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER DENYING
PETITION FOR WRIT OF HABEAS CORPUS [1],
DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY,
AND DENYING PETITIONER LEAVE TO APPEAL IN FORMA PAUPERIS**

On December 12, 2018, Petitioner Marvin Noble, a prisoner incarcerated in Earnest C. Brooks Correctional Facility in Muskegon Heights, Michigan, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF 1. Petitioner challenges his conviction for first-degree murder, in violation of Mich. Comp. Laws § 750.316; carrying a concealed weapon, in violation of Mich. Comp. Laws § 750.227; being a felon in possession of a firearm, in violation of Mich. Comp. Laws § 750.224f; and felony firearm, in violation of Mich. Comp. Laws § 750.227b; and his sentence as a fourth-offense habitual offender, pursuant to Mich. Comp. Laws § 769.12. For the reasons below, the Court will deny the petition.

**BACKGROUND**

Petitioner was convicted following a jury trial in the Wayne County Circuit Court. The Court adopts the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review. *See* 28 U.S.C. § 2254(e)(1);

*Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009). Petitioner's convictions were based on the August 5, 2013, "shooting death of Dennis Washington" in Detroit. *People v. Noble*, No. 324885, 2016 WL 7333323, at * 1 (Mich. Ct. App. Dec. 15, 2016). At trial, the Government presented evidence that Petitioner had previously sold drugs to Washington and that, on August 5, 2013, Petitioner's romantic partner, Joanna Smith, "dropped [Petitioner] off at a Rite Aid store in her black Impala," Petitioner beckoned Washington to an alley, Petitioner shot Washington point-blank in the head, and then Petitioner "called Smith for help to escape from the scene." *Id.* at *2. Petitioner was convicted, and his conviction was affirmed on direct appeal. *Id.*

Petitioner filed a post-conviction motion for relief from judgment, which was denied. *People v. Noble,* No. 14-000744-01-FC (Third Jud. Cir. Ct., Oct. 19, 2017). The Michigan appellate courts denied Petitioner leave to appeal. *People v. Noble*, No. 341415 (Mich. Ct. App. Feb. 9, 2018); *lv. den.* 503 Mich. 879 (2018). Petitioner now seeks habeas relief on nine grounds.

## STANDARD OF REVIEW

The Court cannot grant an application for a writ of habeas corpus on a claim "that was adjudicated on the merits" in a state court "unless" the state court proceeding resulted in a decision that was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented" in state court. 28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain habeas relief in federal court, a state prisoner is therefore required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. A petition should be denied if it is within the "realm of possibility" that fairminded jurists could find the state court decision reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

# DISCUSSION

I.    <u>Sufficiency of the Evidence</u>

Petitioner claims that there was insufficient evidence to support his conviction. It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). When reviewing the sufficiency of the evidence to support a criminal conviction, the Court must determine "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 318–19 (internal citation omitted) (emphasis in the original).

When making its sufficiency determination, the Court must give circumstantial evidence the same weight as direct evidence. *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993). "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006) (internal quotation omitted). Moreover, "[c]ircumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003) (quoting *Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 508 n.17 (1957)).

A federal habeas court "may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court[.]" *Cavazos v. Smith*, 565 U.S. 1, 2 (2011). Instead, a federal court may grant habeas relief "only if the state court decision was 'objectively unreasonable.'" *Id.* (citation omitted). Judges must therefore sometimes uphold "convictions that they believe to be mistaken." *Id.* Indeed, a federal habeas court may only overturn a state court's finding that the evidence was sufficient if the state court's finding was "so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under AEDPA." *Id.*

Finally, on habeas review, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). "It is the province of the factfinder . . . to weigh the probative value of the evidence and resolve any conflicts in the testimony." *Neal v. Morris*, 972 F. 2d 675, 679 (6th Cir. 1992). A habeas court therefore must defer to the fact finder for its "assessment of the credibility of witnesses." *Matthews v. Abramajtys*, 319 F. 3d 780, 788 (6th Cir. 2003).

*A. Premeditation*

Petitioner's primary claim is that there was insufficient evidence of premeditation and deliberation to sustain his first-degree murder conviction. The Michigan Court of Appeals rejected Petitioner's claim. *See People v. Noble*, 2016 WL 7333323, at *2.

To convict a defendant of first-degree murder in Michigan, the state must prove that a defendant's intentional killing of another was deliberated and premeditated. *See Scott v. Elo*, 302 F.3d 598, 602 (6th Cir. 2002) (citing *People v. Schollaert*, 194 Mich. App. 158, 170 (1992)). "The elements of premeditation and deliberation may be inferred from the circumstances surrounding the killing. Premeditation may be established through evidence of the following factors:" (1) the parties' prior relationship, (2) "the defendant's actions before the killing," (3) the circumstances surrounding the killing, and (4) the defendant's actions after the killing. *Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 596 (E.D. Mich. 2001) (citing *People v. Anderson*, 209 Mich. App. 527, 537 (1995)).

Although the minimum time required under Michigan law to premeditate "is incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a 'second look.'" *Williams v. Jones,* 231 F. Supp. 2d 586, 594–95 (E.D. Mich. 2002) (quoting *People v. Vail,* 393 Mich. 460, 469 (1975), *overruled on other grounds by People v. Graves*, 458 Mich. 476 (1998)). "A few seconds between the antagonistic action between the defendant and the victim and the defendant's decision to murder the victim may be sufficient to create a jury question on the issue of premeditation." *Alder v. Burt,* 240 F. Supp. 2d 651, 663 (E.D. Mich. 2003). "[A]n opportunity for a 'second look' may be merely seconds, minutes, or hours or more, depending upon the totality of the circumstances surrounding the killing." *Johnson,* 159 F. Supp. 2d at 596 (quoting *People v. Berthiaume*, 59 Mich. App. 451, 456 (1975)).

"Premeditation may be inferred from . . . the type of weapon used and the location of the wounds inflicted." *People v. Berry*, 198 Mich. App. 123, 128 (1993). For intent, the fact that a defendant used a lethal weapon "will support an inference of an intent to kill." *Johnson,* 159 F. Supp. 2d at 596 (citing *People v. Turner*, 62 Mich. App. 467, 470 (1975)). Finally, both "premeditation and intent to kill may be inferred from circumstantial evidence." *DeLisle v. Rivers,* 161 F.3d 370, 389 (6th Cir. 1998).

Here, there was sufficient evidence for a rational trier of fact to conclude that Petitioner acted with premeditation and deliberation when he shot the victim. The evidence demonstrated that Petitioner shot the victim in the head at close range. Under Michigan law, "deliberation and premeditation may logically be inferred from . . . wounds inflicted upon vital parts" the victim's body. *See Lundberg v. Buchkoe,* 338 F. 2d 62, 69 (6th Cir. 1964). Evidence that the victim had been shot in the head at close range supports a finding of premeditation. *See  Thomas v. McKee*, 571 F. App'x. 403, 407 (6th Cir. 2014).

The Government presented evidence that Petitioner called the victim over to an alley and that he was "casing the area," which, as the Michigan Court of Appeals noted, provided Petitioner enough time to "take a second look." *See People v. Noble*, 2016 WL 7333323, at *2. And Petitioner fled the scene afterwards, which further supports a finding of premeditation. *See, e.g., Moore v. Stewart*, No. 15-cv-10613, 2017 WL 2984152 (E.D. Mich. 2017) (citing *Marsack v. Howes*, 300 F. Supp. 2d 483, 492 (E.D. Mich. 2004)). The Michigan Court of Appeals's rejection of Petitioner's insufficiency of evidence claim did not result "in a decision that was contrary to, or

involved an unreasonable application of *Jackson*." *Durr v. Mitchell,* 487 F. 3d 423, 448 (6th Cir. 2007). Petitioner is therefore not entitled to relief on his challenge to the sufficiency of the evidence regarding premeditation.

*B. Identity*

Petitioner also argues that there was insufficient evidence to establish his identity as the shooter.

The "[i]dentity of a defendant can be inferred through circumstantial evidence." *See Dell v. Straub,* 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002). Eyewitness identification is not necessary to sustain a conviction. *Id.*

Here, the evidence presented that Petitioner was the shooter was more than sufficient to uphold the jury's verdict. Sylvia Gallegos testified that on August 5, 2013, between noon and 1:30 p.m., she was waiting in the drive-through of a Rite Aid pharmacy with Esther Garza when she saw a lanky man with skinny legs who was wearing all black walking by and looking around in a manner that made Gallegos suspicious. ECF 7-13, PgID 523–30. She then noticed another man walk out of Rite Aid with "a white bag in his hand." *Id.* at 531. As the two men "were about to pass each other," the lanky man in all black said to the man holding the white bag: "Hey man, come here, I want to show you something." *Id.* The two men then walked off, and the man wearing black "was more or less looking around to see if [the other man is] following him or not and just still kind of casing the area." *Id.* Gallegos then saw the two men go into an alley behind where she and Garza were sitting in a vehicle. *Id.* A few minutes later, Gallegos "heard a pop" which she and Garza agreed was the

sound of a nearby gunshot. *Id.* at 532. Gallegos and Garza got their prescription and then drove towards the alley to investigate what they had heard and discovered the man Gallegos had previously seen with the white bag "face down in a pool of blood." *Id.* at 534. The man wearing all black was not there. *Id.* Gallegos positively identified Petitioner in a photo array. *Id.* at 540–41. She was unable to identify him in an in-person lineup, but it seems Petitioner was not included in the in-person lineup. *Id.* at 542; ECF 7-14, PgID 932–33. And Gallegos unequivocally identified him in court. ECF 7-13, PgID 542.

Esther Garza testified that on August 5, 2013, she was with Sylvia Gallegos in the Rite Aid drive-through in the "early afternoon . . . probably between 1 and 2." *Id.* at 570–71. Garza noticed a "black gentleman" who was "kind of thick" wearing a "red hat" and "some kind of vest" and was holding "a white bag" walking in a direction that looked like "he came out of Rite Aid." *Id.* at 572. She then saw another man walking from the opposite direction who was "a thinner black man" with "black on." *Id.* at 573. The man in black said something to the man holding the white bag as he passed him and the man holding the white bag stopped, turned around, and started following the man in black. *Id.* at 573–75. She observed the two men walking towards an alley behind her, and then a couple of minutes later "hear[d] a pop or a bang," which she and Gallegos agreed was the sound of a gunshot. *Id.* at 575–76. Garza then saw, through her rear-view mirror, "the gentleman in black go running, holding his side, go running down the alley." *Id.* at 576–77. Garza and Gallegos then got their prescription and drove towards the alley, where they saw the man who was holding

the white bag face down in a pool of blood. *Id.* at 577–79. Garza was unable to identify anyone in an in-person lineup or a photo array, but positively identified Petitioner in court. *Id.* at 582–85. As with Gallegos, it seems that Petitioner was included in the photo array investigators showed Garza but not in the in-person lineup Garza saw. ECF 7-14, PgID 932–34.

Additional witnesses who were familiar with Petitioner also identified him in security camera footage as the man in black seen with the victim in the video shortly before the shooting. *See* ECF 7-13, PgID 681–684, 698–700. Furthermore, Joanna Smith testified that she had a sexual relationship with Petitioner and that on August 5, 2013, she dropped Petitioner, who was wearing all black, off at Rite Aid. ECF 831, 841–43. About five to seven minutes later, Smith, who had only gone a few blocks away, "heard a pop." *Id.* at 845–47. Then, "no more than" ten to fifteen minutes after Smith heard the pop, Petitioner called her to come get him from a nearby corner, and she drove him back to an apartment building, where he changed his clothes. *Id.* at 847–48.

Even without the additional evidence, two eye-witness identifications are sufficient to establish that a "rational trier of fact could conclude beyond a reasonable doubt that it was" Petitioner, "as opposed to someone else, who committed" the murder. *United States v. Sullivan*, 431 F.3d 976, 983–84 (6th Cir. 2005). And the Court will not "substitute [its] judgment for that of the jury in weighing the credibility of the[] witnesses." *Id.* at 984. And as to Petitioner's argument that the police did not recover DNA evidence, fingerprints, or other forensic evidence, "lack of physical

evidence does not render the evidence presented insufficient; instead it goes to weight of the evidence, not its sufficiency." *Gipson v. Sheldon*, 659 F. App'x 871, 882 (6th Cir. 2016) (citation omitted). Here, given the totality of the evidence in presented in the case, a rational trier of fact could conclude beyond a reasonable doubt that Petitioner was the shooter. The Michigan courts did not unreasonably apply *Jackson* when rejecting Petitioner's sufficiency of evidence claim on post-conviction review.

II.     Prior Bad Acts Evidence

Petitioner next claims that the prosecutor deprived him of a fair trial by introducing evidence that he was a drug dealer. Petitioner clams that this evidence was admitted in violation of the Michigan Rules of Evidence, which prohibit the use of "[e]vidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith."  Mich. R. Evid. 404(b)(1).

But "[i]t is not the province of a federal habeas court to reexamine state-court determinations on state-court questions. As a result, errors in application of state law, especially with regard to the admissibility of evidence, are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (internal quotations and citations omitted). Petitioner's claim that the state court violated Mich. R. Evid. 404(b) "is simply not cognizable on habeas review." *Id.*

And Petitioner is similarly not entitled to habeas relief on his related prosecutorial misconduct claim. "Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F. 3d 487, 512 (6th Cir. 2003)). A prosecutor's

improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Prosecutorial misconduct will therefore form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair. *Donnelly*, 416 U.S. at 643–45. And "a prosecutor may rely in good faith on evidentiary rulings made by the state trial judge and make arguments in reliance on those rulings . . . regardless of whether or not the ruling itself was correct." *Key v. Rapelje*, 634 F. App'x 141,146–47 (6th Cir. 2015) (internal quotations and citations omitted). "It certainly does not violate clearly established federal law for a prosecutor to rely on evidentiary rulings made by the trial court." *Id.* at 147. Petitioner's prosecutorial misconduct claim is therefore not cognizable on habeas review.

III.  <u>Effective Assistance of Trial Counsel</u>

Petitioner raises several claims of ineffective assistance of trial counsel. "To establish ineffective assistance of counsel, a [petitioner] must show both deficient performance by counsel and prejudice." *Premo v. Moore*, 562 U.S. 115, 121 (2011) (citation omitted). "To establish deficient performance" a petitioner "must show that counsel's representation fell below an objective standard of reasonableness. A court considering a claim of ineffective assistance must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (internal quotations and

citations omitted). A petitioner must show that counsel's errors were "so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* (internal quotations and citation omitted). "With respect to prejudice, a challenger must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

### A. Failure to Object

Petitioner argues that trial counsel was ineffective for failing to object to the admission of testimony that Petitioner was a drug dealer. Petitioner also argues that trial counsel should have objected to testimony by several witnesses identifying Petitioner from the surveillance videotape, because none of these witnesses personally observed the events and were offering improper lay opinion testimony.

Federal courts "'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (quoting *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)). And the Michigan Court of Appeals concluded that the evidence that Petitioner was a drug dealer and the lay witnesses' testimony concerning their identification of Mr. Noble from the videotape was permissible under state evidentiary law. *Noble*, 2016 WL 7333323, at * 10, 11–13. The Court must therefore defer to the Michigan Court of Appeals' determination that the lay opinion testimony identifying petitioner from the surveillance videotape was admissible under Michigan law. The Court "cannot logically grant the writ based on ineffective assistance of

counsel without determining that the state court erred in its interpretation of its own law." *Davis v. Straub*, 430 F.3d 281, 291 (6th Cir. 2005). Petitioner is not entitled to habeas relief based on trial counsel's failure to object to evidence.

### B. Insufficient Cross-Examination

Another ground on which Petitioner claims his trial counsel was ineffective is his counsel's failure to cross-examine Martha Porter, who witnessed the shooting, about discrepancies between her description of the shooter to the police and Petitioner's actual appearance. Petitioner specifically notes that Porter told the police that the shooter was a dark-skinned man who was about 5'6", whereas Petitioner has light brown skin and is 5'10". Porter testified on direct examination that the shooter was "approximately 5'6"" and that "he was like dark complexion." ECF 7-13, PgID 619–20. On cross-examination, Petitioner's counsel asked Porter whether she told the police the shooter "was about 5'6"" and "looked to [her] to be dark complected." *Id.* at 630. Porter confirmed that she said the shooter was about 5'6" but as to his complexion, she said only that "[h]e was African American," not Caucasian or Hispanic—she could not remember whether the police asked her whether he had light, medium, or dark skin. *Id.*

A defendant does not suffer prejudice, as required to establish ineffective assistance of counsel claim, "[w]hen the jury hears on direct examination the evidence a petitioner feels counsel should have developed in cross-examination." *Ross v. United States,* 339 F.3d 483, 495 (6th Cir. 2003). And counsel's decision regarding the extent to which he cross-examined Porter fell "'within the wide range of reasonable

professional assistance.'" *See Moss v. Hofbauer,* 286 F. 3d 851, 864 (6th Cir. 2002) (quoting *Strickland*, 466 U.S. at 689). Indeed, counsel's strategic decision, after considering the relevant law and facts, to forego a more in-depth cross-examination is "virtually unchallengeable." *Id.*

Petitioner also fails to show how introducing Porter's police statement that the shooter was 5'6" and had dark complexion or introducing evidence that Petitioner is 5'10" and has a light complexion would have affected the jury's decision. Defense counsel did not perform ineffectively by not introducing the statement or introducing specific evidence about Petitioner's appearance, particularly when any effect further probing may have had is entirely speculative. *See Jackson v. Bradshaw,* 681 F.3d 753, 764–65 (6th Cir. 2012) (citation omitted). And Petitioner's failure to provide any evidence of prejudice beyond mere speculation is particularly detrimental to his claim in light of the multiple positive eye-witness identifications and video identifications discussed above.

### C. Failure to Call Firearms Expert

Petitioner next alleges that his trial counsel was ineffective because he failed to call a firearms expert to establish that the shooter was left-handed, which petitioner claims would exculpate him because he is right-handed. Petitioner further claims that such an expert would have established that the shooter was shorter in stature than Petitioner.

A habeas petitioner's claim that trial counsel was ineffective for failing to call an expert witness cannot be based on speculation. *See Keith v. Mitchell,* 455 F. 3d

662, 672 (6th Cir. 2006). Petitioner claims he spoke with a private investigator named Scott Lewis and that Lewis "indicated that a firearm examiner, Mr. David Balash, indicated that it would be hard for a right-handed person to contort his wrist to a three (3) or four (4) o'clock rotation." ECF 1, PgID 49. Petitioner, however, failed to submit an affidavit from Mr. Balash concerning his proposed testimony. Petitioner offers no evidence that there is an expert who would have conclusively testified that the shooter was left-handed and shorter than Petitioner. And the expert that did testify "declined to offer an opinion about the height of the shooter or about whether the shooter was right-handed or left-handed." *Noble*, 2016 WL 7333323, at *4. Petitioner is therefore not entitled to habeas relief based on his trial counsel's failure to call a firearm expert. *See Tinsley v. Million,* 399 F.3d 796, 806 (6th Cir. 2005).

IV.     Effective Assistance of Appellate Counsel

Finally, Petitioner argues that he was denied the effective assistance of appellate counsel. The Sixth Amendment guarantees a defendant the right to effective assistance of counsel on the "first appeal as of right." *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Court appointed counsel, however, does not have a constitutional duty to raise every non-frivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). A habeas court must defer twice: first to appellate counsel's decision not to raise an issue and secondly, to the state court's determination that appellate counsel was not ineffective. *Woods v. Etherton*, 136 S. Ct. 1149, 1153 (2016) (per curiam) ("Given AEDPA, both [the petitioner's] appellate counsel and the state habeas court were to be afforded the benefit of the doubt.").

*A. Failure to Raise Ineffective Assistance of Trial Counsel*

First, Petitioner alleges that his appellate counsel was ineffective because he did not raise a claim of ineffective assistance of trial counsel.

1. Trial Counsel's Failure to Challenge the Arrest Warrant

Petitioner first avers that his appellate counsel should have argued that his trial counsel was ineffective by failing to challenge the legality of the arrest warrant. Petitioner alleges that the police used false or coerced evidence to obtain the arrest warrant against him. Petitioner argues that trial counsel should have filed a motion to dismiss the charges based on the alleged invalidity of the warrant and that appellate counsel should have challenged trial counsel's failure to do so.

"An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction." *United States v. Crews*, 445 U.S. 463, 474 (1980) (citations omitted). "[T]he 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred." *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984). Although the exclusionary rule prohibits the introduction at trial of evidence that was seized in violation of the constitution, a criminal defendant "is not himself a suppressible 'fruit,' and the illegality of his detention cannot deprive the Government of the opportunity to prove his guilt through the introduction of evidence wholly untainted by the police misconduct." *Crews*, 445 U.S. at 474.

Petitioner does not identify any evidence other than his own body that was seized during his allegedly unlawful arrest. Thus, even assuming the arrest warrant was invalid, the invalidity of the warrant would not have been a valid ground on which to challenge Petitioner's charges or conviction. Failing to file a frivolous motion to dismiss does not constitute ineffective assistance of counsel. *See Goldsby v. United States*, 152 F. App'x 431, 438 (6th Cir. 2005). And appellate counsel's decision not to bring a baseless ineffective assistance of trial counsel claim does not constitute ineffective appellate assistance. *See e.g. Fautenberry v. Mitchell*, 515 F.3d 614, 642 (6th Cir. 2008).

### 2. Trial Counsel's Failure to Object

Petitioner next argues that his appellate counsel should have argued that his trial counsel was ineffective by failing to object to the various witnesses giving their opinion that Petitioner was guilty of the murder.

Petitioner points to a number of remarks by Gallegos, in which she repeatedly identified Petitioner as the shooter. Petitioner also claims that Officer Rutledge testified that two men who matched the height, skin complexion, and clothing of the shooter and who were seen loitering around Smith's vehicle were innocent, but that Petitioner was the culprit. Petitioner further points to testimony from Special Agent Brue of the Bureau of Alchohol, Tobacco, and Firearms, who stated that the pattern of telephone calls between Smith and Petitioner was "abnormal" and indicated "criminal activity." ECF 1, Pg ID 63–67

Gallegos's testimony that Petitioner was the shooter was not improper lay opinion testimony but was based on a reasonable inference from the evidence, in which she witnessed Petitioner lure the victim into an alley and then heard a gunshot. *See People v. Daniel*, 297 Mich. App. 47, 57 (1994) (noting that Mich. R. Evid. 701 "allows opinion testimony by a lay witness if it is rationally based on the perception of the witness and helpful to a clear understanding of a fact in issue."). And even if Petitioner could demonstrate that Gallegos's testimony was improper, to succeed on an ineffective assistance of appellate counsel claim for his counsel's failure to bring certain claims, he would have to show that his claim for ineffective assistance of trial counsel based on trial counsel's failure to object to Gallegos's testimony was "clearly stronger" than the arguments his appellate counsel raised." *Fautenberry*, 515 F.3d at 642 (quoting *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002)). And Petitioner's proposed ineffective assistance claim based on his trial counsel's failure to object to Gallegos's testimony is not clearly stronger than the arguments presented.

Officer Jeb Rutledge testified that two other men had been taken into custody but had been released after being questioned by Officer Rutledge. Officer Rutledge testified that the men were eliminated as suspects because they had solid alibis and were cooperative. ECF 7-14, PgID 931–32. The two men were also placed in a live line-up but were not identified by Gallagos or Garza. *Id.* at 932–33. Officer Rutledge's testimony was "primarily fact-based" and "did not impermissibly suggest [Petitioner's] guilt." *United States v. Cobb*, 397 F. App'x 128, 134 (6th Cir. 2010).

Agent Brue's testimony concerning the cell phone activity between Smith and Petitioner did not intrude on the jury's prerogative of determining petitioner's guilt or innocence because Agent Brue merely testified about his observations and what they meant to him through his expertise in the area of cell phone activity. *See e.g. United States v. Johnson*, 488 F.3d 690, 697–98 (6th Cir. 2007); *see also* ECF 7-15, PgID 985 (Court instructing jury to consider Agent Brue an expert in "[t]he forensic analysis of cellular call detail records.").

Here, none of the witnesses offered impermissible opinion testimony about Petitioner's guilt. Because none of the witnesses offered impermissible opinion testimony on an issue that the jury was to decide, trial counsel was not ineffective in failing to object to this testimony. *See Campbell v. Coyle,* 260 F. 3d 531, 558–59 (6th Cir. 2001). And again, appellate counsel's choice not to bring a baseless ineffective of trial counsel claim does not constitute ineffective assistance. Furthermore, even if any of the testimony was arguably impermissible, an ineffective assistance claim based on trial counsel's failure to object is not clearly stronger than the arguments raised by Petitioner's appellate counsel. *See* ECF 7-22, PgID 1351–96 (appellate brief). Petitioner is therefore not entitled to habeas relief based on appellate counsel's failure to raise an ineffective assistance claim based on trial counsel's failure to object.

B. *Handling of the Appeal*

Second, Petitioner argues that appellate counsel was ineffective in the handling of his appeal. Petitioner first claims that appellate counsel's brief was

defective because he failed to cite to the transcripts. *See id.* But the appellate brief contained numerous citations to page numbers in the trial record. Petitioner's claim regarding the alleged defects of the appellate brief therefore lacks merit.

Petitioner also claims that appellate counsel was ineffective for inaccurately claiming that Garza or Gallegos positively identified petitioner at a photo array. Gallegos, however, did testify that she viewed Petitioner from a photo array conducted on August 12, 2013, and testified that the photo was "pretty much close to the resemblance of who I saw, you know, if not the person himself." ECF 7-13, PgID 540–41. Petitioner fails to show that appellate counsel's facts were inaccurate.

### C. Failure to Submit Proof

Third, Petitioner claims, in a conclusory manner, that appellate counsel failed to submit affidavits or any offers of proof in support of some of his claims. Petitioner himself, however, failed to submit any affidavits or offers of proof and failed to enumerate the claims on which appellate counsel should have offered evidence. Conclusory allegations of ineffective assistance of appellate counsel do not warrant habeas relief. *See Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998). And although Petitioner claims that appellate counsel was ineffective for failing to provide affidavits or other evidence to support the motion for a *Ginther*[1] hearing on his ineffective assistance of trial counsel claims, Petitioner himself again failed to provide affidavits or other evidence and is thus unable to establish that trial counsel was ineffective.

---

[1] *People v. Ginther*, 390 Mich. 436, 443 (1973).

*D. Additional Claim Raised in Petitioner's Reply Brief*

In his reply brief, Petitioner argues for the first time that he was denied the assistance of appellate counsel at a critical stage of the proceedings, because appellate counsel allegedly violated two court orders to review the digital videotape footage, the homicide file, and the trial court record to assist Petitioner with his appeal as of right. Petitioner argues that prejudice to his appeal should be presumed as a result of these alleged errors. ECF 8, PgID 2324–25.

"Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice." *Strickland,* 466 U.S. at 692. However, for a presumption of prejudice to arise based on an attorney's failure to test the prosecutor's case, so that reversal based on ineffective assistance of counsel is warranted without any inquiry into prejudice, the attorney's failure to test the prosecutor's case "must be complete." *Bell v. Cone,* 535 U.S. 685, 697 (2002). The denial of counsel on appeal likewise creates a presumption of prejudice. *Penson v. Ohio*, 488 U.S. 75, 88 (1988). But appellate counsel's failure "to press a particular argument on appeal" or "to argue an issue as effectively as he or she might." *Id.* at 88 (internal citation omitted). Thus, although the complete actual or constructive denial of counsel on appeal warrants a presumption of prejudice, mere ineffective assistance of counsel on appeal does not. *Smith v. Robbins,* 528 U.S. 259, 286 (2000) (citation omitted).

Here, Petitioner's appellate counsel filed a motion for a new trial, which included an over-thirty-page brief. ECF 7-22, PgID 1282-1320. Appellate counsel

argued this motion at several hearings before the trial judge and requested a *Ginther* hearing on Petitioner's ineffective assistance of trial counsel claims. ECF 7-18–7-21. Appellate counsel also filed an over-thirty-page-brief on appeal, in which counsel raised seven claims for relief, including several of the claims that Petitioner raises in his petition. ECF 7-22, Pg ID 1351–1396. Because appellate counsel filed a motion for a new trial and an appellate brief on Petitioner's behalf, there is no structural error and the presumption of prejudice does not apply. Petitioner is not entitled to habeas relief on his ineffective assistance of appellate counsel claims.

V.    Certificate of Appealability

Petitioner must obtain a certificate of appealability ("COA") from the Court before he can appeal. 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). The Court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, n. 4 (1983)).

In applying the above standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Miller-El v. Cockrell*, 537 U.S. 322, 336–37 (2003). "When a habeas applicant seeks permission to initiate appellate review of the dismissal of his petition," a federal court should "limit its examination to a threshold

inquiry into the underlying merit of his claims." *Id.* at 327 (citation omitted). "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; *see also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

After conducting the required inquiry, and for the reasons stated in the order above, the Court finds that Petitioner has not made a substantial showing of the denial of a constitutional right with respect to any of his claims. *See* 28 U.S.C. § 2253(c)(2). The Court will therefore deny a certificate of appealability. The Court will also deny Petitioner leave to appeal in forma pauperis, because an appeal would be frivolous. *See Hence v. Smith*, 49 F. Supp. 2d 547, 549 (E.D. Mich. 1999).

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that the petition for a writ of habeas corpus [1] is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner is **DENIED** leave to appeal in forma pauperis.

**SO ORDERED**.

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: August 22, 2019

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 22, 2019, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager

24